# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF KENTUCKY
# PADUCAH DIVISION
# CASE NO. 5:09-cv-00214-R

**MEDIACOM SOUTHEAST LLC**                                    **INTERVENING PLAINTIFF**

v.

**BELLSOUTH TELECOMMUNICATIONS, INC.**
**d/b/a AT&T KENTUCKY**                                                    **DEFENDANT**

## MEMORANDUM OPINION

This matter comes before the Court upon Defendant's Motion to Dismiss (DN 32). Intervening Plaintiff has responded (DN 36), and Defendant has replied (DN 38). This motion is now ripe for adjudication. For the following reasons, Defendant's Motion is GRANTED.

## BACKGROUND

This matter arises out of an agreement ("Agreement") between the City of Hopkinsville, Kentucky, and Defendant BellSouth Telecommunications, Inc. d/b/a AT&T Kentucky ("AT&T Kentucky"). Intervening Plaintiff Mediacom Southeast LLC ("Mediacom") states that this Agreement allows AT&T Kentucky to provide multi-channel video programming, or television services, in Hopkinsville.[1]

AT&T Kentucky holds a state-wide "franchise" granted to a predecessor in interest by the Kentucky General Assembly in 1886. *See S. Bell Tel. & Tel. Co. v. Kentucky*, 266 S.W.2d 308, 309 (Ky. 1954). In this context, a franchise is "a right or privilege granted by the sovereign to a party to do some act or acts which he could not do without this grant from the sovereign power." *Mt. Vernon Tel. Co. v. City of Mt. Vernon*, 230 S.W.2d 451, 452 (Ky. 1950).

---

[1] All claims asserted by the original Plaintiffs were voluntarily dismissed with prejudice on January 12, 2010.

Mediacom contends that AT&T Kentucky's franchise does not permit AT&T Kentucky to offer television services.

Mediacom seeks several declarations, as well as injunctive relief, from this Court. First, Mediacom seeks a declaration that AT&T Kentucky's 1886 franchise does not permit it to offer television services. Second, Mediacom seeks a declaration that AT&T Kentucky must apply for a separate franchise for cable television service before it may begin offering its television service in Hopkinsville. Third, Mediacom seeks a declaration that the Agreement entered into by AT&T Kentucky and the City of Hopkinsville is a franchise, but was obtained without Kentucky's constitutionally required public advertisement and bidding procedures, and as a result is void. Finally, Mediacom seeks an order requiring AT&T Kentucky to obtain an appropriate franchise prior to offering television services in Hopkinsville.

AT&T Kentucky has moved to dismiss Mediacom's Amended Complaint. AT&T Kentucky argues that its franchise permits it to provide the services outlined in the Agreement.

**STANDARD**

"When considering a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the district court must accept all of the allegations in the complaint as true, and construe the complaint liberally in favor of the plaintiff." *Lawrence v. Chancery Court of Tenn.*, 188 F.3d 687, 691 (6th Cir. 1999) (citing *Miller v. Currie*, 50 F.3d 373, 377 (6th Cir. 1995)).

To survive a Rule 12(b)(6) motion to dismiss, the complaint must include "only enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1950 (2009). The "[f]actual allegations in the complaint must be enough to raise a right to relief above the speculative level

on the assumption that all the allegations in the complaint are true." *Twombly*, 550 U.S. at 555 (internal citation and quotation marks omitted). A plaintiff must allege sufficient factual allegations to give the defendant fair notice concerning the nature of the claim and the grounds upon which it rests. *Id.*

Furthermore, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* A court is not bound to accept "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Iqbal*, 129 S. Ct. at 1949.

## ANALYSIS

The Agreement between Hopkinsville and AT&T Kentucky allows AT&T Kentucky to provide "an Internet Protocol ("IP") enabled broadband platform of voice, data and video services ("IP Network"), the video component of which is a switched, two-way, point-to-point and interactive service ("IP-enabled Video Service")." In simplified terms, AT&T Kentucky would transmit IP video signals along its existing infrastructure to customers in Hopkinsville. These IP video services would enable a customer, among other things, to watch television programs.

AT&T Kentucky is the successor in interest to the Ohio Valley Telephone Company ("Ohio Valley"). In 1886, the legislature of Kentucky chartered Ohio Valley and empowered it "to construct and maintain within the state and elsewhere telephone lines, exchanges, and systems." *City of Louisville v. Cumberland Tel. & Tel. Co.*, 224 U.S. 649, 650 (1912). The legislature allowed Ohio Valley to "'construct, equip, and maintain said telephone systems and exchanges, erect poles and string wires thereon, and operate its telephone lines over, along, or

under any highway, street, or alley in the city of Louisville, with and by the consent of the general council of said city.'" *Id.* (quoting 1885-1886 Session Acts, ch. 511, §5). Ohio Valley was also given permission to "construct, equip and maintain telephone lines along, over or under the highways, streets and alley, and across any water-course within this Commonwealth, so as not to obstruct the same." 1885-1886 Session Acts, ch. 511, §5. The Supreme Court of Kentucky has described the property right conferred by the legislative grant as "an irrevocable, perpetual legislative franchise to maintain poles and lines upon any or all highways in the Commonwealth in such a manner as to afford no obstruction to public use." *S. Bell Tel. & Tel. Co. v. Kentucky*, 266 S.W.2d 308, 310 (Ky. 1954).

Mediacom's claims turn on whether the transmission of IP video signals is outside the scope of AT&T Kentucky's existing franchise. If the transmission of IP video signals is within the scope of AT&T Kentucky's existing franchise, then Mediacom's Amended Complaint must be dismissed.

The Court finds Mediacom's contention that AT&T Kentucky requires a separate franchise to offer its IP video service unpersuasive. Mediacom argues that because the "ends" of telephone service and television service are substantially different, AT&T Kentucky's current franchise cannot encompass IP video service. *See Russell v. Ky. Util. Co.*, 22 S.W.2d 289, 291 (Ky. 1929). While Kentucky courts may focus on results to determine whether a franchise is required, *see, e.g. People's Transit Co. v. Louisville R.R. Co.*, 295 S.W.1055, 1058 (Ky. 1927), that is not the question before the Court. There is no dispute that AT&T Kentucky needs a franchise to provide IP video or television services. The question is whether AT&T Kentucky's current franchise already allows it to do so.

Kentucky's Attorney General, on August 6, 2008, addressed this precise question: "Whether the perpetual legislative franchise granted to the Ohio Valley Telephone Company and ratified by the City of Louisville in 1886 requires additional municipal approval before IP-enabled video services can be provided through existing rights-of-way." OAG 08-007. The Attorney General concluded that the franchise would enable a successor of Ohio Valley to provide IP video services within its existing rights-of-way without securing additional authorizations. *Id.* Although this Court is not bound by the opinion of the Attorney General, it does afford it great weight. *See, e.g.*, *Louisville Metro Dep't of Corr. v. King*, 258 S.W.3d 419, 421-22 (Ky. Ct. App. 2007).

The Court agrees with the Attorney General's reasoning and conclusion. The privilege granted to AT&T Kentucky pursuant to its current franchise is "the right to use the public roadways for its poles, lines, and apparatus." OAG 08-007. The transmission of IP video services along AT&T Kentucky's existing facilities "'is merely an advancement or improvement in the art of telegraphy and telephony.'" *Id.* (quoting *Ohio Tel. & Tel. Co. v. Steen*, 85 N.E.2d 579, 580 (Ohio 1949)). IP video "'is but one of many scientific achievements . . . which employs electrical impulses in the transmission process.'" *Id.* (quoting *Ball v. Am. Tel. & Tel. Co.*, 86 So.2d 42, 45 (Miss. 1956)). To require AT&T Kentucky to secure a new franchise "'for every new device that employs the use of electrical impulses . . . would lead to absurd and unreasonable results.'" *Id.* (quoting *Ball*, 86 So.2d at 45). In other words, how could AT&T Kentucky's franchise encompass facsimile and the Internet, but not IP video?

The Court holds, as a matter of law, that AT&T Kentucky's existing franchise permits it to use its current facilities to transmit IP video services to customers in Hopkinsville, as outlined

5

in the Agreement.  Therefore, Mediacom's Amended Complaint must be dismissed.

## CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss (DN 32) is GRANTED.  An appropriate order shall follow.